UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY FREDIANELLI,<br><br>Plaintiff,<br><br>v.<br><br>STEPHAN JENKINS, *et al.*,<br><br>Defendants.<br>_____/ | No. C-11-3232 EMC<br><br>**ORDER DENYING THIRD PARTY DEFENDANTS ERIC GODTLAND MANAGEMENT, INC.'S AND ERIC GODTLAND'S MOTION FOR ORDER CONFIRMING GOOD FAITH SETTLEMENT**<br><br>**(Docket No. 100)** |

Third Party Defendants' motion for an order confirming a good faith settlement came on for hearing before the Court on January 6, 2012. Docket No. 100. For the reasons set forth below, the Court **DENIES** Third Party Defendants' motion.

### I. FACTUAL & PROCEDURAL HISTORY

Plaintiff Anthony Fredianelli is a founder and former member of the rock band, Third Eye Blind ("TEB").[1] In February 2011, Plaintiff brought suit against Defendants Stephen Jenkins; Bradley Hargreaves; Third Eye Blind, Inc.; 3EB Touring, Inc.; Stephen Jenkins Productions, Inc.; 3EB Publishing; Thomas Mandelbaum; Hiscock & Barclay, LLP; David Rawson; Zeisler, Zeisler, Rawson & Johnson LLP; and EMI Blackwood Music, Inc. Compl. at 1. Plaintiff alleges that although he and Defendant Jenkins co-authored many of TEB's early and recent songs, Defendant Jenkins diverted millions of dollars in TEB revenue to corporate entities of which Defendant Jenkins if the sole owner and beneficiary. Compl. ¶¶ 3, 9, 16. Plaintiff also alleges that Defendant Jenkins

---

[1] TEB was formed in 1993. Docket No. 100-2 ¶ 2 ("Godtland Decl."). Plaintiff left the band in 1994, and returned in early 200. Godtland Decl. ¶ 3; Compl. ¶ 54.

registered TEB's copyright and trademark to Defendant Jenkins's own separate corporate entities instead of to the band members. Compl. ¶ 10. Defendant Jenkins then excluded Plaintiff from participation in TEB and Defendants David Rawson and Zeisler, Zeisler, Rawson and Johnson LLP ("Zeisler LLP"), acting as TEB's accountant, withheld money belonging to Plaintiff. Compl. ¶¶ 11, 14.

Plaintiff further alleges that around early 2008, Defendants Jenkins and Thomas Mandelbaum began to lobby the band to fire their manager, Third Party Defendants Eric Godtland and Eric Godtland Management, Inc. (collectively "Godtland").[2] Compl. ¶ 68. Defendant Jenkins then forced Plaintiff and Defendant Bradley Hargreaves to sue Godtland and force Godtland out as band manager. Compl. ¶ 71. Defendant Jenkins, Defendant Hargreaves, and Plaintiff sued Godtland in June 2008, and Defendant Jenkins used band revenues to pay for the litigation. Compl. ¶¶ 76, 81. Although Defendant Jenkins had promised Plaintiff that the litigation expenses would be limited to $100,000, TEB ultimately spent over a million dollars on the Godtland litigation. Compl. ¶¶ 73, 81.

During the litigation, Godtland filed crossclaims against Defendant Jenkins, Defendant Hargreaves, Plaintiff Fredianelli, Defendant Third Eye Blind, Inc., Defendant 3EB Touring, Inc., and Defendant Stephen Jenkins Productions, Inc., including claims for $1.6 million in unpaid management commissions, $3.5 to $5 million in future lost profits, and $1 million in attorney's fees. Compl. ¶ 82, Docket No. 101 ¶ 5 ("Corbelli Decl."). In January 2010, Godtland and TEB Defendants entered into two separate settlements. Godtland ¶ 11. Godtland entered into one agreement with Plaintiff, in which the parties agreed to a mutual general release of all claims and dismissed their respective cases against each other. Corbelli Decl. ¶ 4. The other settlement was between Godtland and the remaining TEB parties; the terms of the settlement is not disclosed. Godtland Decl. ¶ 13.

In 2011, Plaintiff brought this suit against Defendants Stephen Jenkins; Bradley Hargreaves; Third Eye Blind, Inc.; 3EB Touring, Inc.; Stephen Jenkins Productions, Inc.; 3EB Publishing;

---

[2] Godtland was hired as TEB's manager in 1997, and acted as TEB's manager until May 2008. Godtland Decl. ¶¶ 4, 6.

Thomas Mandelbaum; Hiscock & Barclay, LLP; David Rawson; Zeisler, Zeisler, Rawson & Johnson LLP; and EMI Blackwood Music, Inc. Defendants Rawson and Zeisler LLP then filed a third party complaint against Godtland, alleging that Godtland never informed Rawson and Zeisler LLP of Plaintiff's entitlement to unpaid royalties and that Rawson and Zeisler LLP transmitted insufficient royalties and other payments to Plaintiff pursuant to Godtland's instructions. Docket No. 85 ¶ 9. Thus, Rawson and Zeisler LLP seek indemnity from Godtland because in the event that Rawson and Zeisler LLP are held liable for any damages complained of by Plaintiff, this liability will be entirely or partially caused by Godtland. Docket No. 85 ¶ 11. Godtland now moves to confirm its 2010 settlement with Plaintiff, which Godtland argues will have the effect of barring Rawson's and Zeisler LLP's indemnification claims.

## II. DISCUSSION

A. Legal Standard

California Code of Civil Procedure §§ 877 and 877.6 governs the effect of settlements by a joint tortfeasor or co-obligor. *Tech-Bilt, Inc. V. Woodward-Clyde & Assoc.*, 38 Cal. 3d 488, 492 (1985). Section 877 provides:

> Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:
>
> (a) It shall not discharge any other such party from liability unless the terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater.
>
> (b) It shall discharge the party to whom it is given from all liability for any contribution to any parties.

Thus, "Section 877 abrogated the common law rules that precluded the contribution among joint tortfeasors and that a release given to one joint tortfeasor would release all joint tortfeasors." *Gackstetter v. Frawley*, 135 Cal. App. 4th 1257, 1270 (2006).

In order for the settlement to bar any other joint tortfeasor or co-obligor from bringing any further claims against the settling party for contribution or indemnity, the Court must determine,

*inter alia*, that the settlement was made in good faith. Cal. Code of Civ. P. § 877.6(c). Together, the statutes support "the encouragement of settlements and the equitable allocation of costs among multiple tortfeasors." *Tech-Bilt, Inc.*, 38 Cal. 3d 498-99.

B.  "Same Tort" Requirement

As an initial matter, a good faith settlement can only bar an indemnity claim "where joint or concurrent tortfeasors are jointly and severally liable for *the same wrong*." *Carr v. Cove*, 33 Cal. App. 3d 851, 854 (1973). In *Gackstetter*, the court found that a good faith settlement may bar the claims of an unnamed party where the parties' tortious acts "concurred" to produce the plaintiff's injuries. 135 Cal. App. 4th at 1260. *Gackstetter* concerned three lawsuits where an attorney transferred real property into the wrong trust. First, the beneficiaries of a trust sued the trustee for mismanagement of the trusts. *Id.* at 1262. Second, the beneficiaries of a trust sued the attorney who prepared the trust. *Id.* Third, after both cases settled, the trustee brought his own suit against the attorney, seeking indemnity for costs incurred in the defense and settlement of the beneficiaries' suit against the trustee. *Id.* at 1265-66. Although the trustee argued that his claim concerned damages related to his reliance on the attorney's advice, rather than the attorney's transfer of the real property into the wrong trust, the court found that the negligence of both the attorney and the trustee "concurred to produce the sum total of the injuries to the [beneficiaries]." *Id.* at 1277. In support, the court noted that the trustee had "incorporated in each of his causes of action the allegations about [the attorney's] improper conveyance and concealment – allegations that were the basis of the case in which the good faith settlement occurred – the [beneficiaries'] action against [the attorney]." *Id.* at 1278. Thus, there was no distinction between the damages asserted in the suit against the trustee and those sought in the suit against the attorney; instead, both suits concerned the *same injury* to the beneficiary. *Id.* at 1278-79. In ruling, the court distinguished "situations in which the joint tortfeasors have committed torts against the plaintiff that are sufficiently distinct from the torts and damages covered by a good faith settlement so that a claim by one of the tortfeasors for indemnification in connection with the distinct torts would not be barred by the good faith settlement." *Id.*

4

1  Here, Rawson's and Zeisler LLP's indemnity claim is based on Godtland's alleged failure to
2 tell Defendants Rawson and Zeisler LLP to pay royalties to Plaintiff. The Court finds that Godtland
3 has failed to demonstrate that the earlier 2008 litigation concerned the same tort as the one being
4 asserted in the instant case. Unlike *Gackstetter*, where two actions "concurred" to cause the
5 plaintiffs' single harm, two separate harms at issue in the instant case. The original 2008 litigation
6 was between the three band members, on the one hand, and Godtland, on the other, and concerned
7 breach of fiduciary duties by Godtland in connection with his management of the band. As Mr.
8 Fredianelli was aligned with Mr. Jenkins in that case, there was no claim of breach by Mr. Jenkins of
9 any duties owed to Mr. Fredianelli and hence no claims that Mr. Rawson, Zeisler LLP, or Godtland
10 facilitated any such breach. Such a breach is at issue in the instant case only. Thus, although the
11 indemnity claim herein arises in a general sense from the same managerial relationship at issue in
12 the 2008 litigation, the alleged torts and resulting harms at issue in the instant case are distinct and
13 different from the 2008 litigation. The two suits do not involve the "same tort" as required under §
14 877, and the acts complained of in the instant case did not "concur" with the conduct complained in
15 the 2008 case to produce the same singular injury as in *Gackstetter*. Accordingly, the Court finds
16 that the scope of the settlement in the 2008 litigation did not cover the torts at issue in the instant
17 case,[3] and thus § 877 does not apply.

18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///

---

[3] Godtland also argued that the mutual release of claims should be analyzed similar to res judicata. Reply at 5. However, even if the mutual release serves a res judicata effect on Plaintiff, it is irrelevant in this case. Sections 877 and 877.6 concern third party rights, whereas res judicata would concern the effect of a release between a plaintiff and defendant. Here, Rawson and Zeisler LLP were not parties to the 2008 litigation, and thus res judicata would not apply to bar their claims in the instant case.

### III. <u>CONCLUSION</u>

For the reasons stated above, the Court **DENIES** Third Party Defendants Godtland's motion to confirm a good faith settlement.

This order disposes of Docket No. 100.

IT IS SO ORDERED.

Dated: January 23, 2012

_____
EDWARD M. CHEN
United States District Judge