UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY FREDIANELLI,<br><br>   Plaintiff,<br><br>  v.<br><br>STEPHAN JENKINS, *et al.*,<br><br>   Defendants.<br>_____/ | No. C-11-3232 EMC<br><br>**FINAL PRETRIAL CONFERENCE ORDER** |

## I.   TRIAL DATE & LENGTH OF TRIAL

The trial shall begin on October 7, 2013, Courtroom 5, 17th Floor. There shall be a total of eight court days. Trial shall be conducted from 8:30 a.m. to 2:00 p.m. (or slightly longer to finish a witness), with one 15-minute break and one 40-minute lunch break. October 7, 11, and 18 will be full days (until 4:30 p.m.). Parties must arrive by 8:00 a.m. or earlier as needed for any matters to be heard out of the presence of the jury. The jury shall be called at 8:30 a.m. The trial week is Monday through Friday, excluding holidays. Thursdays are dark.

Mr. Fredianelli shall have twelve hours to present his evidence, and Defendants twelve hours. This includes direct examination by one side of its witnesses, cross-examination by that side of the opposing party's witnesses, and any rebuttal, and closing argument. This does not include jury selection, opening statements, or jury instructions.

## II. DISPUTED LEGAL ISSUES

In their pretrial filings, the parties have identified for the Court four legal issues that are disputed. The Court addresses each issue below.

A. Burden of Proof

In the instant case, there is a dispute about who has the burden of proof on Plaintiff's claim for breach of contract. Relying on *Wolf v. Superior Court*, 107 Cal. App. 4th 25 (2003), Plaintiff maintains that Defendants have the burden of proof. *See id.* at 35 ("agree[ing] with [the plaintiff] that, in contingent compensation and other profit-sharing cases where essential factual records are in the exclusive control of the defendant who would benefit from any incompleteness, public policy is best served by shifting the burden of proof to the defendant, thereby imposing the risk of any incompleteness in the records on the party obligated to maintain them"). In response, Defendants argue that *Wolf* is not controlling because they "were not exclusively in control of the financial records of the band":

> Plaintiff was provided regularly with cash flow reports regarding 3EB Touring, and was also provided with financial records in connection with profit distributions, which contained references to many of the disputed expense items which are in question in this case. Furthermore, Plaintiff has the full financials of the Defendant entities, and has had these documents since 2011, and there does not appear to be any allegation that these financial records are incomplete.

Docket No. 245 (St. at 11). Plaintiff disputes that he was in fact given full financial information. *See* Docket No. 245 (St. at 11-12) (claiming that he was given only summaries of accounting documents and that he was supplied with incomplete information).

The Court rejects Plaintiff's position that the burden of proof should be shifted to Defendants. While the Court did rely on *Wolf* in a prior order, *see* Docket No. 229 (Order at 25-26), that was for purposes of resolving the summary judgment motion filed by Defendants. This case is now at trial, and Plaintiff has failed to establish that burden-shifting is appropriate at this stage of the proceedings.

In this regard, the Court takes note of the analysis in *Sander/Moses Productions, Inc. v. NBC Studios, Inc.*, 142 Cal. App. 4th 1086 (2006). There, the court emphasized that *Wolf* was decided at the demurrer stage. "Therefore, in analyzing the plaintiff's contention regarding the burden of

proof, the appellate court in that case was required to treat the allegations of the complaint as if they were true." *Id.* at 1095. Or to state the matter somewhat differently, "[b]ecause of the procedural posture of the case, the [*Wolf*] court was not called upon to make a definitive determination as to whether the burden of proof should be shifted at the time of trial." *Id.* at 1096. The *Sander/Moses* court also indicated that, at the time of trial, it would be difficult for a plaintiff to claim a lack access to documents because the plaintiff would have had the opportunity to obtain documents during discovery. *See id.* at 1097 & n.12.

Plaintiff has not demonstrated he lacked access to relevant documents in discovery. Because Plaintiff has failed to make a showing that this is one of the "rare occasions" or "few[] and narrow" exceptions justifying a departure from the normal allocation of the burden of proof, *id.* (internal quotation marks omitted), the Court concludes that the burden of proof on the breach-of-contract claim properly stays with Plaintiff. However, because the statute of limitations is an affirmative defense, Defendants have the burden of proving that defense, except to the extent Plaintiff asserts his discovery of the claim was delayed in which case the Plaintiff has the burden with respect thereto. *See* CACI 455; CACI 1925.

B.  Statute of Limitations

Plaintiff has taken the position that he is entitled to damages starting March 13, 2003. *See* Docket No. 34 (Prop. Instructions at 34). In response, Defendants argue that, at best, Plaintiff is entitled to damages starting February 22, 2009 (*i.e.*, two years before his complaint was filed) because (1) under California Code of Civil Procedure § 339, there is a two-year statute of limitations for "[a]n action upon a contract . . . not founded upon an instrument of writing," Cal. Code Civ. Proc. § 339(1), and (2) there is no dispute here that the parties' agreement to share in touring profits was oral, not written.

In his papers, Plaintiff disputes that § 339 governs and argues instead that there is a four-year statute of limitations pursuant to California Code of Civil Procedure § 337. Under § 337, there is a four-year limitations period for "[a]n action upon any contract . . . founded upon an instrument in writing." Cal. Code of Civ. Proc. § 337. Plaintiff acknowledges that the parties had an oral agreement but contends still that § 337 should apply because, even though the agreement was oral, it

1  "ar[ose] out of a written agreement that was not signed" (*i.e.*, the Third Eye Blind Inter Party
2  Agreements) and "[a] contract need not be signed to be considered 'in writing' for statute of
3  limitations purposes; i.e., a written offer may be accepted orally or by acceptance of performance."
4  Docket No. 245 (St. at 13); *see also* Docket No. 246 (Prop. Instructions at 11) (arguing that "the
5  touring profit sharing agreement at issue here came from the written agreement that was never
6  formalized").

7      The problem with Plaintiff's position is that this Court already determined, in its summary
8  judgment order, that Defendants did not consent to enter into the Third Eye Blind Inter Party
9  Agreements. *See, e.g.*, Docket No. 229 (Order at 17) (stating that "there is no evidence the written
10 Agreement was consented to by all parties" and "Plaintiff has not met his burden of producing
11 evidence from which a reasonable jury could conclude that the Band consented to be bound by the
12 terms of the Agreement"). Therefore, Plaintiff cannot invoke the benefit of § 339. *See also Citizens*
13 *Cas. Co. v. Otis Clark & Co.*, 19 Cal. App. 3d 294, 299 (1971) (noting that "[i]t is not sufficient that
14 the cause of action is in some way remotely or indirectly connected with an instrument in writing or
15 that the instrument is a link in the chain establishing the cause of action[;] [t]he instrument itself
16 must contain the contract to do the thing for the nonperformance of which the action is brought").
17 There is no written document which contains all the terms of the parties' agreement. *See, e.g.*,
18 *Estate of Thottam*, 165 Cal. App. 4th 1331, 1340 (2008) (stating that "[t]he material terms of a
19 proffered contract must be sufficiently certain to provide a basis for determining what obligation the
20 parties have agreed to").

21     Plaintiff argues still that, even under a two-year statute of limitations, he should not be
22 limited to damages starting on February 22, 2009, because the parties had a tolling agreement. *See*
23 Docket No. 257 (Opp'n at 5). Furthermore, Plaintiffs argues that, regardless of any tolling
24 agreement, he should be able to get damages as far back as 2003 because (1) he "was unaware that
25 he would not be paid the corresponding value for the touring percentages until after [he] was kicked
26 out of the band [in 2009] and Defendants repudiated [his] ongoing economic interests in band
27 projects," Docket No. 246 (Prop. Instructions at 25); (2) the continuing violation doctrine is
28 applicable such that he can pull in any misconduct that occurred from 2003 and on; and/or (3) the

4

doctrine of fraudulent concealment – which "tolls the statute of limitations where a defendant, through deceptive conduct, has caused a claim to grow stale" – is applicable such that he can pull in that earlier misconduct. *Aryeh v. Canon Bus. Solns., Inc.*, 55 Cal. 4th 1185, 1192 (2013).

With respect to the tolling agreement, Plaintiff has offered evidence that there was an agreement to toll the running of the statute of limitations for 120 days. *See* Docket No. 257 (Ex. C) (e-mail) (stating parties' agreement that "[a]ll applicable statutes of limitation will be tolled for One Hundred Twenty (120) Days from January 10, 2010, and the time between January 10, 2010 and April 10, 2010 (the 'Tolling Period'), shall not be included in calculating any statute of limitations that might be applicable to any potential claim by your client Tony Fredianelli . . . and my clients"). At the hearing, Defendants did not contend that the tolling agreement was not applicable or should not be given effect. Accordingly, the "baseline" date for the statute of limitations is October 24, 2008, as opposed to February 22, 2009.

As for Plaintiff's remaining arguments, the Court briefly addresses each below.

In the first argument, Plaintiff is essentially making a "delayed discovery" argument. *See Aryeh*, 55 Cal. 4th at 1192 (stating that the rule "'postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action'"). Defendants claim that the rule cannot be applied in the instant case because distribution payments were made regularly, *see generally* Docket No. 259 (Rawson Decl.); thus, if a distribution payment when made was not correct, then the breach occurred with that payment. *See* Docket No. 245 (St. at 17). Plaintiff, however, suggests that distribution payments were not *always* regularly made – "Defendants would often hold back touring profits until the next year or until other Defendants would repay the touring profits as loans." Docket No. 246 (Prop. Instructions at 25). Plaintiff also argues that, as a historical matter, wrongfully deducted expenses were often reimbursed such that only if there was a refusal to reimburse those expenses could he be put on notice of any wrongdoing by Defendants. *See* Docket No. 257 (Opp'n at 3). In addition, Plaintiff asserts that the use of touring revenues to fund other projects did not necessarily constitute a breach of the agreement until Defendant Jenkins denied Plaintiff the benefit of those projects, at which point the touring revenues should have been reimbursed. *See* Cal. Civ. Code § 1657 (providing that, "[i]f no time is specified for the

5

1  performance of an act required to be performed, a reasonable time is allowed"). In light of
2  Plaintiff's position, the Court concludes that the accrual issue is a question of fact for the jury to
3  resolve.

4  The Court rejects, however, Plaintiff's second argument – *i.e.*, the continuing violation
5  argument. "The continuing violation doctrine aggregates a series of wrongs or injuries for purposes
6  of the statute of limitations, treating the limitations period as accruing for all of them upon
7  commission or sufferance of the last of them." *Aryeh*, 55 Cal. 4th at 1192.

> The continuing violation doctrine serves a number of equitable purposes. Some injuries are the product of a series of small harms, any one of which may not be actionable on its own. Those injured in such a fashion should not be handicapped by the inability to identify with certainty when harm has occurred or has risen to a level sufficient to warrant action. Moreover, from a court-efficiency perspective, it is unwise to impose a limitations regime that would require parties to run to court in response to every slight, without first attempting to resolve matters through extrajudicial means, out of fear that delay would result in a time-barred action. Allegations of a pattern of reasonably frequent and similar acts may, in a given case, justify treating the acts as an indivisible course of conduct actionable in its entirety, notwithstanding that the conduct occurred partially outside and partially inside the limitations period.

*Id.* at 1197-98.

Here, Plaintiff has failed to show that failure to make payments after the breach of the contract claim accrued is subject to further relief from the statute of limitations under the continuing violation doctrine. Notably, in *Aryeh*, the California Supreme Court concluded that

> nothing in the operative complaint alleges the presence of factors that might warrant application of the continuing violation doctrine. The complaint identifies *a series of discrete, independently actionable alleged wrongs*. Nor is this a case in which a wrongful course of conduct became *apparent only through the accumulation of a series of harms* . . . . Consequently, the trial court and the Court of Appeal correctly rejected the continuing violation doctrine's application.

*Id.* at 1198.

Furthermore, in *Aryeh*, the California Supreme Court made a distinction between the continuing violation doctrine and the continuous accrual rule. "[U]nder the theory of continuous accrual, a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within

the applicable limitations period." *Id.* at 1192. "[U]nlike the continuing violation doctrine, which renders an entire course of conduct actionable, the theory of continuous accrual supports recovery only for damages arising from those breaches falling within the limitations period." *Id.* at 1199. The Court went on to describe as a continuous accrual case an action where an employee had sued her employer for sex discrimination in her wages. The Court acknowledged that the defendant's "obligation not to discriminate in setting wages was an ongoing one" but added that this did not make defendant's entire course of conduct actionable; rather, the employee could recover only those lost wages owed during the preceding two years, *i.e.*, the limitations period." *Id.* Here, as Defendants argue, their obligation to pay touring profits to Plaintiff is analogous to an employer's obligation to pay wages. *Cf. O'Donnell v. Vencor Inc.*, 465 F.3d 1063, 1068 (9th Cir. 2006) (in federal Equal Pay Act case, stating that "[e]ach discriminatory paycheck [plaintiff] received constitutes a violation of the EPA with a cause of action accruing (and the running of the limitations period commencing) upon the receipt of the discriminatory paycheck").

As for Plaintiff's final argument to get around the statute of limitations – *i.e.*, fraudulent concealment – Plaintiff essentially agreed at the hearing that, given the facts in this case, the more appropriate lens to evaluate the statute-of-limitations issue would be the delayed discovery rule. The fraudulent concealment claim adds nothing to Plaintiff's claim of delayed accrual.

C.    <u>Amendment</u>

In the Joint Pretrial Conference Statement, Plaintiff states that he seeks to amend his first amended complaint ("FAC") to add a fraud claim. Plaintiff has not submitted any proposed amendment as a formal matter but indicates that the claim would have several components – *e.g.*, making fraudulent representations regarding profit sharing (*i.e.*, from the outset, Defendants never intended to honor the promise to share in profits), fraudulently concealing touring revenue, and fraudulently inducing Plaintiff to participate in the *Godtland* lawsuit. *See* Docket No. 19 (St. at 19).

Even if the Court were to apply the liberal standard for amendment under Federal Rule of Civil Procedure 15, amendment here would not be justified. Not only has Plaintiff unduly delayed in asking for leave to amend, but amendment here would be prejudicial to Defendants as the case is on the eve of trial. Such a claim would raise new issues such as Defendants' intent to defraud

1  Plaintiff, Plaintiff's reliance thereon, and expanded tort damages. To the extent Plaintiff would not
2  seek any damages beyond the contract damages, then his asserted fraud claim adds nothing to the
3  scope of his relief.

4  D.  Accounting

5  Finally, the parties have a dispute based on the fact that Plaintiff has not only a claim for
6  breach of contract that has not been dismissed but also a claim for an accounting. *See Teselle v.*
7  *McLoughlin*, 173 Cal. App. 4th 156, 179 (2009) (stating that "[a] cause of action for an accounting
8  requires a showing that a relationship exists between the plaintiff and defendant that requires an
9  accounting, and that some balance is due the plaintiff that can only be ascertained by an
10 accounting"; adding that "[a]n action for accounting is not available where the plaintiff alleges the
11 right to recover a sum certain or a sum that can be made certain by calculation"). Plaintiff suggests
12 that there should still be a bench trial on its accounting claim (an equitable claim[1]) after the jury trial
13 on its contract claim.

14 However, the jury can determine damages through the claim for breach of contract. An
15 accounting claim is unnecessary. To the extent Plaintiff contends he does not have adequate
16 discovery to present that evidence and seeks to bifurcate the jury trial on damages from the
17 accounting claim, the Court denies that request because it is based on Plaintiff's failure to pursue
18 discovery. Accordingly, the Court shall not bifurcate proceedings and further warns Plaintiff that he
19 is expected to present any and all evidence relevant to his claims during the jury trial.

### III. PLAINTIFF'S MOTIONS IN LIMINE

21 Plaintiff has not filed any motions in limine.

22 ///
23 ///
24 ///

---

[1] *See, e.g.*, *Van Dyke v. Lions gate Entm't, Inc.*, No. SACV 13-454-JST (ANx), 2013 U.S. Dist. LEXIS 105288, at *10 (C.D. Cal. July 24, 2013) (stating that "[a]n accounting is an equitable claim 'for an amount which is unliquidated and unascertained and which cannot be determined without an accounting'"); *Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*, 186 Cal. App. 4th 696, 713 (2010) (stating that, "[r]egardless of its equitable nature, an action for accounting may arise out of a contract").

## IV. DEFENDANTS' MOTIONS IN LIMINE

### A. Motion in Limine No. 1 (Docket Nos. 252 and 259)

In their first motion in limine, Defendants ask the Court to exclude all evidence of any breaches prior to February 22, 2009. This motion essentially addresses the parties' dispute regarding the statute of limitations.

The motion is denied for the reasons stated in Part II.B, *supra*. The tolling agreement between the parties makes the relevant date October 24, 2008, and not February 22, 2009. Furthermore, Plaintiff may be able to get damages for the period prior to October 24, 2008, under the delayed discovery rule.

### B. Motion in Limine No. 2 (Docket Nos. 253 and 259)

In their second motion in limine, Defendants ask the Court to exclude evidence of the Third Party Blind Inter Party Agreements. Defendants contend that, because the Court already concluded that the document did not constitute a contract between the parties, the document is irrelevant. They further argue that the document should be excluded under Federal Rule of Evidence 403.

In response, Plaintiff argues that the document is still relevant because Mr. Godtland "will testify at trial that this is the document that he used when conveying the terms of the [oral] Touring Profit Agreement to Plaintiff in March of 2003" – *i.e.*, "the document [was] used by Defendants when forming the [oral] Touring Revenue Agreement with Plaintiff." Docket No. 262 (Opp'n at 2, 4). Plaintiff further argues that some of its terms informs the parties' practice and understand is thus probative to interpreting the agreement.

The Court defers ruling on the motion. As stated at the hearing, the Court has concerns over admitting the entirety of the document based on Federal Rule of Evidence 403 (*i.e.*, danger of confusion to the jury). Furthermore, the relevance of the agreement is predicated on a proper foundation showing that it is probative of the oral contract at issue. The parties shall meet and confer to determine whether they can reach agreement as to (1) admissibility of certain sections of the "Inter Party Agreements" and (2) a limiting instruction to be given in conjunction with the admission of these sections. **The parties shall file a joint statement on the two issues above by October 1, 2013.**

## V. WITNESSES

Below is a list of the witnesses that the parties intend to call or may call as the need arises. It appears that all witnesses will be testifying live.

The parties shall not offer any witness other than those identified absent good cause and express leave of the Court.

A. Plaintiff's Witnesses
(1) Tony Fredianelli.
(2) Eric Godtland.
(3) Arion Salazar.
(4) Stephan Jenkins.
(5) David Rawson.
(6) Darlene Johnson.
(7) Kevin Cadogan.
(8) Tim Mandelbaum.
(9) Thomas Tramadore.

B. Defendants' Witnesses
(1) Stephan Jenkins.
(2) Brad Hargreaves.
(3) David Rawson.
(4) Darlene Johnson.
(5) David Steinberg.
(6) Richard Idell.

## VI. WRITTEN DISCOVERY RESPONSES & EXHIBITS

A. Written Discovery Responses

Based on the parties' submissions, it appears that the parties do not intend to present discovery excerpts at trial, other than for impeachment and rebuttal.

B. <u>Exhibits</u>

Each side was instructed to identify fifteen objections to the other side's exhibits on which it sought advance rulings. Because Plaintiff expressly stated that he did not seek any advance rulings, the Court addresses only those objections identified by Defendants.

The Court reserves ruling on the bulk of Defendants' objections, particularly because Plaintiff admitted at the pretrial conference that he was not certain which exhibits he would be relying on at trial and that he might use many exhibits only for purposes of impeachment. Also, the relevance of some of the documents will depend on what is presented at trial. The Court, however, does provide the following rulings and/or guidance.

| Exhibit No. | Description of Document | Ruling |
|---|---|---|
| 6, 28, 127, 140 | E-mail exchange, dated 4/2008, between S. Jenkins and E. Godtland.<br><br>E-mail exchange, dated 3/2008, between Plaintiff and E. Godtland.<br><br>Administration Agreement, dated 7/2008, between S. Jenkins and Evergreen Pop and Alternative, LLC.<br><br>Letter, dated 3/3/2004, from E. Godtland to Band members. | Ruling deferred.<br><br>Conditional relevance to understanding the *Godtland* litigation and whether expenses were properly chargeable to touring revenues. Foundation required.<br><br>There are also Fed. R. Evid. 403 issues. |
| 15 | E-mail, dated 5/23/2008, from Plaintiff to D. Johnson and B. Hargreaves.<br><br>In the e-mail, Plaintiff notes that "Tim and Stephan are starting an imprint label. I'm curious to know how the non related Third eye blind expenses are going to be accounted for since Brad and I are not a part of that venture??" | Ruling deferred.<br><br>May be relevant if, *e.g.*, expenses were charged against touring revenue.<br><br>Also may have relevance regarding statute-of-limitations issue – *i.e.*, Plaintiff's diligence.<br><br>Foundation required. |

| | | |
|---|---|---|
| 24 | E-mail, dated 2/21/1993, from S. Jenkins to "David." In the e-mail, S. Jenkins states that "Eric will put this memo into a legalize [sic] so that you will have an impregnable wall against my biological prerogative to fuck over my friends and colleagues." | Objection sustained. The probative value is weak, particularly given the remoteness of the evidence in terms of time. Any probative value is substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403. |
| 37 | E-mail exchange, dated 4/2006, involving B. Hargreaves, E. Godtland, and/or D. Rawson. E-mail, dated 4/14/2006, from E. Godtland to B. Hargreaves. E-mail, dated 4/14/2006, from B. Hargreaves to E. Godtland. | Ruling deferred. Conditional relevance and chargeability against touring revenues of recording costs; foundation required. As to hearsay, potential statement of party opponents. |
| 52 | Letter, dated 3/24/2010, from H. King to R. Idell (both attorneys). | Ruling deferred. Conditional relevance to cross-claim; foundation required. |
| 80 | E-mail, dated 7/21/2003, from D. Rawson to E. Godtland. E-mail, dated 7/21/2003, from E. Godtland to D. Rawson. | Ruling moot. No objection was made by Defendants to this exhibit in the exhibit chart. |
| 84, 119 | E-mail, dated 11/4/2009, from Plaintiff to, *inter alia*, S. Jenkins and B. Hargreaves. ZZR Recap of Megaforce Statement – Detail. | Ruling deferred. Conditional relevance to terms of oral agreement – *i.e.*, reduction of Plaintiff's share from 33% to 25%; foundation required. |
| 116 | Handwritten notes. The document appears to be handwritten notes that E. Godtland made during a meeting on 7/5/1997. | Ruling deferred. Conditional relevance to terms of oral agreement; foundation required. |
| 117 | Cadogan Settlement Agreement, dated 6/17/2002. | Objection overruled. Plaintiff has made a sufficient showing of relevance – *i.e.*, the fact that all Band members signed the agreement suggests that Mr. Jenkins did not have unilateral authority to do things vis-a-vis the Band. |
| 144 | Corrections to deposition testimony of Plaintiff in the Godtland case. | Admissible as prior consistent statement in rehabilitation of Plaintiff under Rule 801(d)(1)(B). |

### VII. DEMONSTRATIVES

The parties shall meet and confer in advance (prior to the date of demonstration) and exchange demonstratives to avoid objections. Any objections shall be brought to the Court's attention before 4:00 p.m. the day prior to being exhibited.

### VIII. JURY QUESTIONNAIRE, JURY VOIR DIRE, JURY INSTRUCTIONS & VERDICT FORM

A.  Jury Questionnaire and Voir Dire

The Court shall not use a jury questionnaire but shall voir dire the potential jurors (taking into account the proposed voir dire submitted by the parties). The Court has already described in its last Case Management Conference order the list of standard questions it intends to ask. The Court shall also give each party a brief opportunity to voir dire the potential jurors after questioning by the Court.

B.  Jury Instructions

The Court shall provide the parties with the Court's proposed jury instructions in advance of the first day of trial and will schedule a process for comments and resolution of any disputes.

C.  Verdict Form

The Court defers ruling on a final verdict form; the disputes will be resolved in conjunction with the jury instructions. At this juncture, however, the Court is not inclined to use a detailed special verdict form such as that submitted by the parties.

This order disposes of Docket Nos. 252, 253, 259, and 261.

Attached to this order are the Court's guidelines for trial in civil cases.

IT IS SO ORDERED.

Dated: September 27, 2013

_____
EDWARD M. CHEN
United States District Judge